IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PATRICK J. QUINN,**

       **Plaintiff,**

                                                      Civil Action 2:14-cv-1540

v.                                                 Judge Algenon L. Marbley

                                                Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION

      Plaintiff, Patrick J. Quinn, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Social Security Disability Insurance Benefits and Supplemental Security Income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's Reply (ECF No. 12), and the administrative record (ECF No. 9).  For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

I. BACKGROUND[1]

Plaintiff protectively filed applications for benefits in April 2009, alleging that he had been disabled since January 19, 2009. On June 17, 2009, Plaintiff's applications for benefits were denied. (R. at 64-65.) Plaintiff subsequently filed the current application for disability insurance benefits on October 3, 2011, and an application for Supplemental Security Income on October 4, 2011, alleging disability due to vertigo, heart problems, punctured lung, and broken ribs. (R. at 66.)

Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 184-85.) Administrative Law Judge Joseph L. Heimann (the "ALJ") held a hearing on March 11, 2013, at which Plaintiff, who was represented by counsel, testified. (R. at 25–63.) At the hearing, Plaintiff amended his alleged onset date to July 20, 2011. A vocational expert, Georgette Gunther, (the "VE") also testified. On March 28, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 8–18.)

In his decision, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2015. (R. at 10.) At step one of the sequential

---

[1]For the sake of brevity, the Undersigned provides a brief outline of the procedural history and will discuss the record evidence as necessary to address Plaintiff's contentions of error within the Analysis Section.

evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since his alleged onset date of July 20, 2011. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of status post myocardial infarction with defibrillator placement and lumbar degenerative disc disease. (*Id.*) The ALJ found that because Plaintiff's mental health impairments "cause no more than 'mild' limitation in [activities of daily living, social functioning, and maintaining concentration, persistence, or pace] and 'no' episodes of decompensation which have been of extended duration . . . they are non-severe." (R. at 12.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> . . . [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with additional limitations. The [Plaintiff] can never climb ladders, ropes, or scaffolds. The remaining posturals are limited to

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

>occasionally (which includes balance). The [Plaintiff] must avoid concentrated temperature extremes, humidity and wetness. The [Plaintiff] must further avoid even moderate levels of irritants. Lastly the [Plaintiff] must avoid all exposure to the operation/control of moving machinery, unprotected hazards or heights.

(R. at 13.) The ALJ found Plaintiff's statements concerning the presence of incapacitating discomfort and associated functional limitations not entirely credible. (R. at 15.) In determining Plaintiff's RFC, the ALJ gave "great weight" to the State Agency medical advisors.

At step four, relying on the VE's testimony, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. at 16.) At step five, he found that Plaintiff can, however, perform jobs that exist in significant numbers in the national economy. (R. at 17.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 18.)

On July 18, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–3.) Plaintiff then timely commenced the instant action.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. ANALYSIS

Plaintiff raises three contentions in his Statement of Errors. The first two contentions relate to the ALJ's step two finding that Plaintiff did not suffer from a severe mental impairment. Plaintiff first asserts that the ALJ's finding that Plaintiff has no severe mental impairment is not supported by substantial evidence. He also asserts that the ALJ improperly concluded that Mr. Sours is not an acceptable medical source and therefore erred in weighing his opinion. Finally, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because he erred in weighing Dr. Weaver's opinion. The Undersigned concludes that the ALJ erred at step two in evaluating whether Plaintiff's mental impairments were severe. This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. Thus, the

5

Undersigned need not resolve the alternative bases Plaintiff asserts to support reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

The United States Court of Appeals for the Sixth Circuit has described step two of the sequential process as follows:

> At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." [20 C.F.R. §§ 404.1520a(a) and 404.1520a(b)(1)]. If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. at §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 *et seq*.; *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id*. If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id*. at § 404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. *See id*. § 404.1520a(d)(2).

*Rabbers*, 582 F.3d at 652–53. Thus, if no signs or laboratory findings substantiate the existence of an impairment, it is appropriate to terminate the disability analysis. *See* SSR 96-4p, 1996 WL 374187, at *2 (July 2, 1996) ("In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process set out in 20 CFR 404.1520 and 416.920 . . . ."). Furthermore, in the Sixth Circuit, "the step two severity regulation codified at 20 C.F.R. §§ 404.1520(c) and 404.1521 has been construed as a *de minimis*

hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

>Here, the ALJ explained his findings at step two as follows:
>
>The [Plaintiff] alleged mental health impairments (2F). As such, I considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria. I find the [Plaintiff] has the following degree of limitation: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace. The [Plaintiff] also had "no" episodes of decompensation (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).
>
>In further support of the above, I note the [Plaintiff] does not consult with a mental health specialist or take any mental health medication. There is no credible evidence of abnormal concentration/attention (1F-11F). The treatment record does not contain references to any problems with personal care/hygiene or to an inability to perform most normal daily activities due to any mental health impairment. The [Plaintiff] reported he is able to tend to his person[al] care, prepare simple meals, do housekeeping tasks, and do laundry (8E). In terms of social function, there are no references to any uncooperative or inappropriate behavior in the record. The [Plaintiff] lives in a cabin with friends, and at one point, he lived with his mother and a girlfriend (8E, 11F and testimony). There is no evidence of any abnormal interpersonal difficulties within the household. The [Plaintiff] attends alcoholics anonymous weekly with friends without any noted social difficulties (8E). The [Plaintiff] goes fishing with friends. The [Plaintiff] also shops and occasionally goes to the movies. In regards to concentration pace and persistence, the [Plaintiff] also has no significant limitations. For example, he indicated his daily routine consists of watching "a lot" of television (8E/5). The [Plaintiff] is able to manage financial matters, which includes paying bills, counting change, handling a savings account and using a checkbook/ money order (8E). The [Plaintiff] can also drive and travel independently, both of which require significant focus, concentration and memory. During the hearing, the [Plaintiff] followed the proceedings. He also had no difficulty with attention or concentration; he recited demographic information without difficulties; and he did not require significant repetition of questions. The [Plaintiff] alleged he suffered from dyslexia and had learning disabilities. However, the [Plaintiff] testified that he went to school to become a diesel mechanic and received his certification. Additionally the [Plaintiff] has maintained a solid work history since 1998 despite any learning limitations (7D).
>
>Floyd Sours, MA opined that the [Plaintiff] would have significant difficulties in

>social functioning and with work place stress based on his history with arrests and alcoholism (11F).  The [Plaintiff] reported he stopped drinking in 2005, which is consistent with the record (11F).  Additionally, Mr. Sours is not an acceptable medical source (20 CFR 404.1513, 416.913 and SSR 06-3p).  Furthermore, Mr. Sours appeared to have relied heavily on the [Plaintiff's] subjective report in that his evaluation does not reflect he reviewed the [Plaintiff's] longitudinal record.  More importantly, his opinion is inconsistent with the overall record, which does not reflect significant mental health problems, symptoms, or limitations (1F-21F).  Conversely, [I], give[] significant weight to the psychological opinions of the Agency consultants (20 CFR 416.927(d)(3)(4)(f)) (3A, 5A, 8A).  As a general matter non-examining opinions, do not deserve as much weight as those of examining/treating physicians.  However, their opinions do deserve weight here because the mild findings are consistent with the totality of the evidence (1F-21F).  However, the [ALJ] determined that the [Plaintiff] was mildly limited in social functioning.  As explained, the record does not support finding any significant social limitations, which would substantially impede the [Plaintiff's] ability to work.
>
>Because the [Plaintiff's] medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are non-severe (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(R. at 12.)

The Undersigned finds that Plaintiff's contention that the ALJ erred in determining that Floyd Sours, M.A., is not an acceptable medical source is well-taken.  Because Mr. Sours is a licensed psychologist, the ALJ was required to consider his opinion in determining whether Plaintiff's medical conditions are severe.  *See* 20 C.F.R. § 416.927(c) (providing that the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case); *see also* 20 C.F.R. § 404.1513(a) (explaining that acceptable medical sources include licensed or certified psychologists).  The Commissioner admits that the ALJ's determination that Mr. Sours is not an acceptable medical source "appears incorrect."  (Commissioner's Resp. in Opp. 12, ECF No. 11.)  The Commissioner contends, however, that the ALJ's error is harmless because the ALJ stated other, valid reasons supported by substantial evidence for discounting Mr. Sours'

opinion.  *Id.*  The Undersigned disagrees.

On January 12, 2012, Mr. Sours conducted a consultative examination of Plaintiff on behalf of the Social Security Administration.  Mr. Sours diagnosed Plaintiff with Bipolar Disorder, mixed; Alcohol Dependence in remission; and noted that Plaintiff exhibited a number of anti-social personalities.  (R. at 540.)  Mr. Sours assigned Plaintiff a GAF score of 59 and noted that he exhibited bipolar disorder and alcohol dependence in remission, but seems to be functioning very well at the present time.  He assigned Plaintiff a functional GAF score of 61.  *Id.*  Regarding Plaintiff's appropriateness of response to supervision and co-workers, Mr. Sours concluded as follows:

> In the interview [Plaintiff] states that he has 5-7 arrests, mostly for domestic violence.  He was convicted and served 4 years in prison for domestic violence and assault with attempt to do bodily harm.  Later, he did say that he had 12 D.U.I's at least.  In the interview [Plaintiff] did say, "I'm an alcoholic", but states, that he has been sober since 2005.  In high school he admitted to behavior problems and states that he fought and argued a lot.  His work history was consistent because he states, "I am a functional drunk."  His longest job was 5 years, but he was fired twice because of verbally fighting on the job.  He states that for the most part he did get along with co-workers, but "I just got a problem with authority . . . in the way they address some issues some of the time."  It is this examiner's opinion that [Plaintiff] has a high probability for inappropriate behavior in a work setting as he relates to fellow workers and co-workers and supervisors.

(R. at 540-41.)

With regard to his appropriateness of response to work pressures, Mr. Sours found as follows:

> In the interview [Plaintiff] states that he has a problem with authority.  He also described behavior problems that have gotten him an arrest record and a school record that is filled with problems.  It is this examiner's opinion that [Plaintiff] has a high probability of increased inappropriate behavior in a work setting under work pressure.  It should be mentioned that most of the time he has had a consistent work record and has only been fired twice for fighting verbally.

9

*Id.*

As explained above, the ALJ erred in reviewing Mr. Sours' opinion because he concluded that he was not an acceptable medical source.  This error is not harmless.  First and most importantly, it is not clear whether the ALJ would have concluded that Plaintiff does not have a severe mental impairment had he not improperly concluded that Mr. Sours is not an acceptable treating source.   Furthermore, the ALJ's finding that Mr. Sours must have relied on Plaintiff's subjective reports is not supported by substantial evidence, as Mr. Sours specifically noted that he considered Plaintiff's arrest history, history of problems in school, history of being fired from two different jobs, and Plaintiff's demeanor and behaviors throughout the examination.

Finally, the ALJ states that Mr. Sours' opinion is inconsistent with the overall record, which he found does not reflect significant mental health problems.  The ALJ expresses this finding, and then purports to assign "significant weight" to the state agency non-reviewing psychologists.  The state agency psychologists, however, also determined that Plaintiff had moderate difficulties in maintaining social functioning and concluded that Plaintiff retains the capacity to interact superficially.  They also concluded Plaintiff is moderately limited in his ability to respond appropriately to changes in the work setting and can function in a work setting where work expectations are clear, changes infrequent, and when necessary, easily explained. (R. at 73, 77, 78, 103, 107, 108.)  Additionally, state agency psychologist, Deryck Richardson, Ph.D., also found that Plaintiff had moderate limitations in maintaining concentration, persistence, or pace.  (R. at 122.)  Accordingly, the state agency psychologists' opinions are consistent with Mr. Sours' findings.  Furthermore, all of the medical opinions in the record suggest that Plaintiff has severe mental impairments.

Moreover, while the ALJ points to evidence in the record including Plaintiff's lack of mental health treatment, activities of daily living, and Plaintiff's ability to maintain a relationship with a girlfriend as evidence that Plaintiff's mental health conditions are not severe, his arrest history and history of being fired from jobs due to verbal altercations supports Mr. Sours and the state agency psychologists' opinions that Plaintiff has moderate difficulties in social functioning.

Given that the ALJ improperly rejected Mr. Sours' opinion, this case should be remanded for further review of the evidence. Further, under this Circuit's prevailing *de minimus* view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.3d at 862. Here, Plaintiff has put forth evidence that demonstrates that his mental impairments have more than a minimal effect on his work ability. Thus, remand is necessary.

Moreover, this error is not harmless. Where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same). Here, the ALJ did not consider Plaintiff's mental limitations after step two or

account for any mental limitations in Plaintiff's RFC. Accordingly, the ALJ's errors at step two are not harmless.

## IV.   CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## V.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: August 17, 2015 /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge